WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ann Leigh,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-20-01751-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Ann Leigh's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed, (Doc. 19, Doc. 27, Doc. 28), and the Court now rules.

**I.  BACKGROUND**

  **A.  Factual Overview**

Plaintiff was 59 at the time of her application (AR 66) and has a history of work as a customs inspector and security consultant. (AR 616–17). Plaintiff filed her social security disability claim on August 11, 2015, alleging disability due to neck problems and hypertension. (AR 157–63, 187).

The ALJ initially issued an unfavorable decision. (AR 15–26). The Commissioner denied the request for review of that decision and adopted the ALJ's decision as the agency's final decision. (AR 1). On review, the District Court remanded the matter to the agency for further proceedings, finding that the ALJ's reasons for discounting Dr. Finley's opinions and Plaintiff's subjective testimony were insufficient. *Leigh v. Acting Comm'r of*

*the SSA*, No. CV-19-1716-PHX-ESW, 2019 U.S. Dist. LEXIS 214130 (D. Ariz. Dec. 12, 2019).

On September 1, 2020, the ALJ issued another unfavorable decision. The ALJ found that Plaintiff—despite alleging inability to work since July 2015—worked at substantial gainful activity (SGA) level in 2017 and 2018. Because of this, the ALJ determined that Plaintiff could perform her past relevant work and was not disabled. (AR 541).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1) (E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant

"can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**C. The ALJ's Application of the Factors**

Here, at the first step, the ALJ concluded that Plaintiff had engaged in substantial gainful activity since the alleged onset date of her disability, but there were continuous 12-month periods in which Plaintiff did not engage in substantial gainful activity. (AR 541–42).

At the second step, the ALJ determined that Plaintiff's cervical degenerative disc disease, cervical spondylosis, cervical stenosis, hypertension, lumbar degenerative disc disease, right knee impairment, gastroesophageal reflux disease (GERD), and right foot impairment constituted severe impairments under 20 C.F.R. 404.1520(c). (AR 542).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b). The ALJ also found that Plaintiff can occasionally climb ramps or stairs and frequently balance, stoop, kneel crouch, and crawl.

At the fourth step, the ALJ concluded that Plaintiff can complete past relevant work as a customs inspector and, accordingly, concluded that Plaintiff was not disabled. (AR 547–48).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff raises three potential errors in the ALJ's analysis: (1) the ALJ did not afford sufficient weight of Dr. Molly Finley, who treated claimant; (2) the ALJ did not provide specific and legitimate reasons for rejecting the opinions of Dr. Arnold Ostrow; and (3) the ALJ improperly discounted Plaintiff's subjective symptom testimony. (Doc. 19 at 1). The Court addresses each in turn.

### A. Opinion of Dr. Finley

Plaintiff first argues the ALJ erred by failing to give "great weight" to the opinions

of her treating physician Dr. Molly Finley. The weight that a particular opinion is afforded is based on who is giving that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. 404.1527(c)(1)–(2).

But a treating physician's opinion is not necessarily conclusive. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Plaintiff argues that the ALJ failed to give legitimate reasons for rejecting the opinion of Dr. Finley. (Doc. 19 at 11). Dr. Finley opined that Plaintiff could not walk, sit, or stand for more than 30 minutes at one time without taking a 10-minute break to relieve pain and discomfort. (AR 297, 413). The ALJ, however, afforded little weight to Dr. Finley's opinion, finding that:

> On September 10, 2018, Dr. Molley [sic] Finley, D.O., the claimant's treating physician, submitted an additional statement, on behalf of the claimant (Exhibit 20F). This statement was written after an unfavorable decision, which had been issued to the claimant dated May 8, 2018. Dr. Finley responded to some to some [sic] of the critiques in this decision. She noted she relied on the MRI, as subjective and objective findings varied. She, then, noted that the MRI findings supported her limitations. Because the residual functional capacity (RFC) is supposed to be the most an individual can do despite limitations (SSR 96-8p), it is unclear if Dr. Finley's opinions are helpful in determining a RFC. Dr. Finley opined the claimant had limitations in her May 2016 opinion (Exhibits 10F/12F). Her opinion, in September 2018, reflects the claimant at her worst (Exhibit 20F). Additionally, in September 2018, Dr. Finley opines that, at her worst, the claimant's impairments are as described in her May 2016 opinion, but that the claimant had significantly lesser degrees of limitations, without indicating what that is or how often. There is no indication what the claimant can do, at the most, with the day to day variations, nor how frequent that is. Furthermore, based on these opinions, the undersigned notes, it is unclear if Dr. Finley is evaluating the claimant at her worst or if it is the standard

>baseline-i.e., are the limitations she gave highly variable and how often are they of this severity. Of note, on May 21, 2015, office treatment notes indicate the claimant continues to have "daily pain" due to cervical radiculopathy (Exhibit 4F/6); however, Dr. Finley, herself, notes this is not accurate as does recent treatment notes [sic] from 2019 (Exhibit 19F). As such, the undersigned affords Dr. Finley's opinion little weight in the finding of disability.

(AR 546).

Plaintiff argues that there is no indication that Dr. Finley's examination occurred when Plaintiff was at her worst. (Doc. 19 at 11). Plaintiff further argues that Dr. Finley's opinion does not conflict with the 2019 treatment notes. (*Id.*). The government argues that the "RFC is a finding of the most an individual can do despite her limitations, but Dr. Finley's opinions addressed Plaintiff at her worst, which the ALJ found not helpful in assessing RFC." (Doc. 27 at 24). The government further claims that Dr. Finley's opinions "cannot be given controlling weight" because her opinions were "extreme" and inconsistent with the other substantial evidence. (*Id.*).

Here, the ALJ gave little weight to Dr. Finley's opinions because Dr. Finley's treatment notes were unclear and inconsistent regarding whether she was evaluating Plaintiff at her worst or on a typical day. *See Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003) (finding the fact that a treating physician's opinion was not supported by his own treatment notes was a specific and legitimate reason to not credit the opinion). Plaintiff is correct that Dr. Finley never writes that she examined Plaintiff "at her worst." But Dr. Finley did write that "subjective and objective findings on a particular day will vary." (AR 884). Coupled with Dr. Finley's opinion in September 2018 significantly departs from her previous opinions, (AR 546), the ALJ reasonably inferred that Dr. Finley's opinion came when evaluating Plaintiff at her worst.

The ALJ also found that Dr. Finley's opinion was inconsistent with Plaintiff's activities of daily living, treatment notes, and objective medical evidence. (AR 544–46). Because of the inconsistencies, the ALJ concluded that Dr. Finley's opinion carried little weight in determining RFC. (AR 546). Instead, the ALJ relied on the opinions of State

agency medical consultants, finding that their opinions were consistent with the objective evidence and Plaintiff's activities of daily living. (AR 547). In sum, the ALJ did not err by affording "little weight" to Dr. Finley's opinion.

### B. Opinion of Dr. Ostrow

The ALJ also reduced the weight of the opinions of Dr. Ostrow who testified at the administrative hearing that Plaintiff could perform a range of light work. The ALJ found:

> The claimant's representative questioned Dr. Ostrow because a claimant's treating source, Dr. Finley, noted that she weighs MRI findings more so than examination findings and asked Dr. Ostrow if he agreed with this. Dr. Ostrow testified he did not agree with this. The representative then asked Dr. Ostrow if he thought this was a reasonable method of analysis. Dr. Ostrow did not agree this method was not reasonable. Dr. Ostrow testified the reason he disagreed is because the results of a MRI make it very difficult to provide a picture compared to a physical examination, which is a composite evaluation and considers the documented clinical examination, objective evidence as well as radiographic findings. Additionally, he testified there is no evidence in the record that shows the claimant has any limitations with walking. The undersigned finds that Dr. Ostrow found a lesser degree of light work, which would allow the claimant to perform past relevant work. It is noted that Dr. Ostrow relied significantly on foot impairments. However, as with the neck, there is not significant treatment in the record to suggest limitations. Specifically, the foot exam revealed normal findings (Exhibit 19F/23). Additionally, on August 2017, the evidence noted 95% improvement in foot pain (Exhibit 14F/1). Any greater limitation appears to have been for a short duration. The undersigned finds Dr. Ostrow's opinion on the claimant's work related functional limitations to be inconsistent with the medical evidence and objective studies. Accordingly, the undersigned affords Dr. Ostrow's opinion little weight in the finding of disability.

(AR 545). The ALJ concluded that Dr. Ostrow's opinion was "inconsistent with the medical evidence and objective studies" and assigned his opinion little weight. (AR 546).

Plaintiff argues that the ALJ erred in reducing Dr. Ostrow's opinion as he "failed to give specific and legitimate reasons." (Doc. 19 at 10). She asserts that the ALJ improperly stated that Dr. Ostrow relied significantly on foot impairments as Dr. Ostrow testified that his opinion was based on "degenerative changes in the right foot, and the lumbosacral discogenic disease, and the degenerative changes in the right knee." (*Id.*) (quoting AR 606). Plaintiff also argues that the ALJ committed harmful error in rejecting Dr. Ostrow's

"limitation to occasional reaching in all directions." (*Id.*).

The government contends that the ALJ properly rejected Dr. Ostrow's testimony as his testimony was inconsistent with the medical evidence and objective findings. (Doc. 27 at 24). The government further argues that Dr. Ostrow's testimony is substantially disparate from Dr. Finley's opinions, and that these different opinions undercut the reliability of his opinion. (*Id.* at 19).

Here, the ALJ provided sufficiently specific and legitimate reasons for discounting Dr. Ostrow's opinion. The ALJ relied on objective findings such as physical examinations and diagnostic images to assign little weight to Dr. Ostrow's opinion. (AR 545). Additionally, the ALJ pointed to recurring documentation that Plaintiff's foot pain improved over time, which suggested that her symptoms were managed effectively. (AR 545). The ALJ provided sufficient reasoning for the Court "to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014). In sum, the Court concludes that the ALJ did not err by affording little weight to Dr. Ostrow's opinion.

**C. Claimant's Symptom Testimony**

Finally, Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective symptom testimony. (Doc. 19 at 12).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d

1  676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing
2  reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

3  At the first step, the ALJ determined that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (AR 543). At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 543).

8  Plaintiff argues that the purported inconsistency between her "subjective complaints and the objective evidence" is not "a legally sufficient reason for declining" to credit Plaintiff's statement. (Doc. 19 at 14). The government argues that the ALJ properly stated sufficient reasons for discounting Plaintiff's testimony. (Doc. 27 at 18).

12  In assessing a claimant's credibility, an ALJ may consider a range of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

19  The ALJ considered those factors here and discounted Plaintiff's subjective symptom testimony. The ALJ noted that Plaintiff had minimal treatment done that was inconsistent with the degree of limitation alleged. (AR 543) The ALJ further found that over-the-counter medication effectively treated the Plaintiff's limitations. (AR 437, 491, 499, 504, 544). Finally, the ALJ concluded that Plaintiff's activities were inconsistent with her statements and the degree of limitation alleged. (AR 544). Considering these findings together, which are supported by substantial record evidence, the ALJ rejected Plaintiff's subjective symptom testimony. The ALJ did not err by doing so. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision

where the evidence is susceptible to more than one rational interpretation.").

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 18th day of February, 2022.

James A. Teilborg
Senior United States District Judge